**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **MICHAEL OSEI** | * |
| **Plaintiff** | * |
| **vs.** | * **Civil Action No. DKC-15-2502** |
| **UNIVERSITY OF MARYLAND UNIVERSITY COLLEGE, *et al.*** | * |
| **Defendants** | * |

*** * * * * * * * ***

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Defendants, University of Maryland University College ("UMUC" or "College"), Javier Miyares, Claibourne Patty, Julie Lindenmeier, Terrence Cooper, and Lynette O'Leary (jointly referenced as "Defendants") by their attorneys, Brian E. Frosh, Attorney General of Maryland, and Corlie McCormick Jr., Assistant Attorney General, submit this memorandum in support of their Motion to Dismiss for Failure to State a Claim pursuant to Fed. R. Civ. P. 12(b)(6).

## I. INTRODUCTION

Plaintiff, Michael Osei, former UMUC student, filed his complaint for relief and request, *inter alia*, for an injunction and temporary restraining order, against UMUC *pro se*, as a result of UMUC's decision to expel Mr. Osei for submitting fraudulent documents in support of his request for additional financial aid. As explained in further

detail herein, the Court should dismiss Mr. Osei's complaint because he fails to state a claim for relief and is otherwise not entitled to an injunction, temporary restraining order, or any other relief he requests.

## II. RELEVANT FACTS

Defendant UMUC accepted Plaintiff, Michael Osei's application for admission to UMUC's Master of Science program for the Fall, 2014 academic term. (ECF 1 at ¶ 15.) Mr. Osei also enrolled in classes at UMUC for the Spring, 2015 academic term.

During the Spring, 2015 academic term, Mr. Osei requested additional federal student financial aid due to extenuating circumstances. (ECF 1 at ¶¶19 - 20.) On March 30, 2015 Mr. Osei was notified that decisions on such matters usually take ten business days after the UMUC Financial Aid Office receives the completed appeal. (*Id*. at ¶20.) On April 20, 2015, Mr. Osei withdrew his request for the additional federal funds. (*Id*. at ¶21.)

On May 14, 2015, Claibourne Patty notified Mr. Osei via e-mail that he would be charged with a student conduct violation for submitting false documents to the Office of Financial Aid related to his request for additional assistance. (*Id*. at ¶22.) Upon receipt of Mr. Patty's notice, Mr. Osei requested that UMUC consider non-disciplinary action, but the College declined to consider alternatives to discipline. (*Id*. at ¶27.) On July 16, 2015, Mr. Osei was notified that UMUC would hold a hearing to resolve the Code of Student

Conduct charges against him. (*Id*. at ¶30.) The Hearing was scheduled to occur on July 28, 2015, (*id*.,) and did occur on that date, though Mr. Osei chose not to participate. In a letter dated August 12, 2015, Mr. Osei was expelled from UMUC for his violations of the Student Code of Conduct[1]. (ECF 15 at 1 -2, Ex. G.)

## STANDARD OF REVIEW

Pursuant to Federal Rules of Civil Procedure 12(b)6, the trial court may dismiss a complaint for failing to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)6. While the court should accept all well pleaded facts, and view the complaint in a light most favorable to the plaintiff, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)2. "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Wyckoff v. Maryland*, 522 F.Supp.2d 730, 734 (D. Md. 2007) *citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, complaints riddled with *"*[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements do not suffice*"* to state an actionable claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Wyckoff v. Maryland*, 522 F.Supp.2d 730, 734 (D. Md. 2007). In other words, the court is not bound to accept mere "conclusory, unwarranted deductions of fact", or legal conclusions "couched as factual allegations". *See Wyckoff*, 522 F.Supp.2d at 734. Instead, plaintiff must allege

1 On August 28, 2015, UMUC delivered to Mr. Osei, an amended notice of expulsion.

facts that support each element of his claim. *See id.* A claim must have 'facial plausibility'. *See Iqbal*, 556 U.S. 678. A complainant must allege facts that "raise a right to relief above the speculative level," *see Twombly*, 550 U.S. at 555, and provide "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. In short, a motion to dismiss "tests the legal sufficiency of a complaint," *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999), and dismissal is appropriate when a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see* Fed. R. Civ. P. 12(b)6.

## III. ARGUMENT

Mr. Osei's sundry claims against the defendants rely on his mistaken belief that the defendants had no authority to expel him from UMUC. Mr. Osei errantly surmises that Title IV of the Higher Education Act forbid the College from investigating and/or imposing discipline upon students when the discipline was related to financial aid. Of course the University was not prohibited by Federal law from disciplining a student for perpetrating a fraud against the institution and enforcing its own policies. Moreover, as discussed in greater detail herein, *infra*, UMUC is immune from many of Mr. Osei's claims, some of his claims are not recognized causes of action in Federal Court and he otherwise fails to state an actionable claim against the Defendants and fails to demonstrate that he is entitled to injunctive relief.

### A. UMUC, A State Agency, Is Immune from Plaintiff's 42 USC § 1983, 42 USC § 1981, And State Law Claims.

Because UMUC is entitled to sovereign immunity from 42 U.S.C. § 1981, § 1983, § 1985, § 1986, and Maryland state law causes of action, those claims should be dismissed. UMUC is a Maryland State agency. *See* Md. Code Ann., Educ. § 12-101(b)(5)(v) (2014); *see* Md. Code Ann., Educ. § 12-102(a)(2),(3) (2014). Generally, the State of Maryland and its agencies are immune from suit, absent consent. *See Lewis v. Talbot County, et al*., 262 F. Supp. 2d 608, 612 (D. Md. 2003); *Virginia v. Reinhard*, 568 F.3d 110, 115 (4th Cir. 2009). The Courts in this jurisdiction recognize that State Sovereign Immunity is a "bedrock principle of 'Our Federalism'." *Reinhard*, 568 F.3d at 115. When the Constitution was framed, the States "consented to a system of dual sovereignty and [] therefore, entered the Union with their sovereignty intact." *Id*. Despite its immunity, the State consents to suit against it under limited circumstances. The State only waives that immunity and consents to suit where Congress both: 1) "unequivocally expresses its intent to abrogate" State immunity, *Reinhard*, 568 F.3d at 116; and 2) "acts pursuant to a valid grant of constitutional authority." *Id*. Because Congress did not intend to abrogate State immunity when it enacted Sections 1981, 1983, § 1985 and § 1986, and because the University has not waived its immunity related to the State law claims, UMUC is entitled to dismissal.

### ***1. UMUC is immune from Plaintiff's 42 U.S.C. §1983 Claims***

42 U.S.C. § 1983 enables individuals to initiate claims against persons acting under the color of State law. *See* 42 U.S.C. § 1983. Because § 1983 was designed to empower individuals to seek redress from *persons* acting under the color of State law, and the State itself is not a person, the State and its agencies are immune from § 1983 based claims. *See Waker v. Owen,* 2010 WL 1416145, at 3 (D. Md. 2010) (*citing Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989)); *see also, Lewis*, 262 F. Supp. 2d at 612 (*citing Quern v. Jordan*, 440 U.S. 332, 341 (1979)). Accordingly, Plaintiff's 42 U.S.C. § 1983 claims, fail to state a cause of action. For the same reasons, the plaintiff's § 1981, § 1985, and § 1986 claims should be dismissed.

### ***2. UMUC is immune from Plaintiff's 42 U.S.C. §§1981, 1985, and 1986 Claims***

Similar to § 1983, the University is immune from Plaintiff's § 1981 claims and those claims should be dismissed. 42 U.S.C. § 1981 "outlaws discrimination in the making and enforcement of private contracts." *Googerdy v. N. Carolina Agric. & Technical State Univ.*, 386 F. Supp. 2d 618, 624 (2005). Because Congress, when it enacted 42 U.S.C. § 1981, did not express an intent to abrogate State immunity pursuant to its constitutional authority, a plaintiff "cannot pursue a direct § 1981 claim against Defendant, which is an alter ego of the State." *Googerdy*, 386 F. Supp. 2d at 625; *see*

*also, Foster v. Maryland State Police, et al.*, 2010 U.S. Dist. LEXIS 4433, *15 (D. Md. Jan. 20, 2010) (*citing Victors v. Kronmiller*, 553 F. Supp. 2d 533, 543 (D. Md. 2008)).

Similarly, Congress did not express its intent to abrogate State immunity when it enacted 42 U.S.C. §1985 and 42 U.S.C. §1986. As is true with § 1983, State agencies like UMUC cannot be considered "persons" capable of engaging in a conspiracy, and therefore cannot be subject to § 1985 and § 1986 liability. *See Clark v. Maryland Pub. Safety & Dep't of Corr. Servs.*, 247 F.Supp. 2d 773, 776, n. 2 (D. Md. 2003); *Small v. Chao*, 398 F.3d 894, 898 (7th. Cir. 2005); *Rode v. Dellarciprete*, 617 F.Supp. 721, 722 – 723 (M.D. Pa 2000); *Coffin v. South Carolina Dep't of Soc. Servs*., 562 F. Supp. 579, 586 (D. S.C. 1983). Thus, Plaintiff's §1981, §1985, and §1986 claims fail to state a cause of action. Further, the University is immune from Plaintiff's State law causes of action.

***3. UMUC is immune from State Law Claims.***

The State of Maryland's limited waiver of tort and contract immunity does not extend to individual plaintiffs filing suit in federal court. Md. Code Ann., State Gov't § 12-103 (2014). The State of Maryland provides a limited waiver of immunity for individuals filing tort and contract suits in Maryland State courts. Md. Code Ann., State Gov't § 12-104 (2014); Md. Code Ann., State Gov't §12-201 (2014). The State however, maintains its immunity from all actions in federal court, except where State immunity has been lawfully abrogated. *See* Md. Code Ann., State Gov't § 12-103 (2014); *see Dixon v. Baltimore City Police Dept*., 345 F. Supp. 2d 512, 513 (D. Md. 2003); *see Waker*, 2010

WL 1416145 at *3. State immunity has not been lawfully abrogated with respect to Mr. Osei's State law causes of action. Thus, UMUC maintains its immunity from those state law claims. As a result, those causes of action should be dismissed.[2]

**B. Defendants Should Be Dismissed From Mr. Osei's Title VI Claims.**

Mr. Osei's Title VI claims are not actionable against the defendants and should be dismissed. Title VI of the Civil Rights Act of 1964 prohibits recipients of federal funds from excluding, denying benefits, or discriminating against a person "on the ground of race, color, or national origin." 42 U.S.C. § 2000d. Like Title VII actions, plaintiffs alleging violations of Title VI may support their allegations through direct evidence or by way of the "well known *McDonnell Douglas* burden shifting framework." *Mwabira-Simera v. Morgan State Univ.*, No. ELH-10-1497, 2013 WL 1285007, *5 (D. Md. March 26, 2013). Mr. Osei has alleged no direct evidence. To satisfy the *McDonnell Douglas* test, among other things, Mr. Osei must first allege that he was:

1) a member of a protected class;
2) suffered an adverse action;
3) maintained satisfactory performance;
4) a similarly situated individual outside the protected class was treated more favorably.

*See Broussard v. Panetta*, No. CCB 11-3401, 2013 WL 45902, *5 (D.Md. 2013).

2 Similarly, plaintiff would be unable to maintain a tort action in a Maryland State Court because he fails to meet the conditions precedent to filing suit against the State in its own courts. *See* Md. Code Ann., State Gov't § 12-101 *et. seq*.

Mr. "Osei must allege that he was treated differently from similarly situated students who were not members of the protected class." *See Osei v. La Salle Univ*., 493 Fed. Appx. 292, 296 (3d Cir. 2012). However, Mr. Osei fails to allege that other students found to have submitted fraudulent financial aid documents were not subject to expulsion.

Moreover, as Mr. Osei declines to address whether he intentionally committed fraud, ECF 1 at ¶¶22 – 27, 40, he is unable to assert that he performed to the satisfaction of UMUC. Mr. Osei's conduct did not meet expectations because as he concedes, UMUC maintains a Student Code of Conduct which forbids the submission of forged documents. ECF 1 at ¶¶22, 23, 25. Thus, Mr. Osei fails to establish the *prima facie* elements required to pursue a Title VI claim against UMUC.

Finally, Mr. Osei is unable to maintain a Title VI action against the individual defendants because 42 U.S.C. § 2000d is applicable only to recipients of federal funds. Mr. Osei fails to allege that any of the individual defendants were recipients of federal funds and "the proper defendant in a Title VI case is an entity rather than an individual." *See Jackson v. Katy Indep. Sch. Dist.*, 951 F.Supp. 1293, 1298 (S.D. TX 1996); *see* 42 U.S.C. § 2000d. Thus, the individual defendants cannot be culpable for violations of Title VI.

### C. HEA And False Claims Act Counts Are Not Actionable Against Defendants Because Federal Law Does Not Proscribe Discipline Under UMUC Policy.

As addressed herein, *supra*, there are no statutes which would preclude UMUC from disciplining Mr. Osei for committing fraud. In support of his action against the College and individual defendants, Mr. Osei relies upon his own interpretation of the Title IV of the Higher Education Act of 1965 ("HEA"). The HEA was enacted for the purpose of "making the benefits of postsecondary education available to students" by providing federal grants and other financial aid to eligible students. *See* 20 U.S.C. §1070(a). Though postsecondary institutions are required to report financial aid fraud, waste, and abuse, neither the HEA nor any related regulations control whether a postsecondary institution may impose discipline for violations of that institution's Code of Student Conduct. *See id*; *see* 34 C.F.R. §668.16(f), (g) (In determining the institution's eligibility to participate in an HEA program, the Secretary of Education will review whether the institution is able to systematically identify discrepancies in the information it receives and reports fraudulent submissions to the Inspector General.) Similarly, 31 U.S.C. §3729, which governs false claims against the United States Government, which also must be investigated by the United States Attorney General, *see* 31 U.S.C. §3730, is simply not applicable to the Defendants.

UMUC, as acknowledged by Mr. Osei, sought to discipline Osei for violating the Code of Student Conduct when he submitted forged documents in support of his request for additional financial aid. *See* ECF 1 at ¶¶20 – 24; *see* ECF 1 at Ex. B. However, the Defendants do not rely on the HEA, or the False Claims Act to legitimize its decision to discipline Mr. Osei. UMUC policies and procedures provide sufficient authority for its decision to expel Mr. Osei and the statutes Mr. Osei believes govern this matter are simply inapposite and irrelevant. *See* ECF 1 at ¶¶22 – 30; *see* ECF 1 at Ex. B.

**D. Remaining Claims For Relief Should Be Dismissed Because Facts Alleged Are Not Actionable.**

Mr. Osei's remaining claims reference the same operative facts and notwithstanding his citation to additional legal theories, should be dismissed primarily for the same reasons as the claims addressed hereinabove, *supra* at Argument, A-D. Mr. Osei, under the misguided premise that UMUC lacked authority to enforce its own policies, raises a panoply of legal theories, which he believes support an award of monetary relief against the Defendants and an injunction or TRO against UMUC.

Indeed, there are a few unusual cases "where courts have seen it fit to insert themselves into the academic milieu". *Onawola v. Johns Hopkins Univ*., 412 F.Supp. 2d 529, 532 (D.Md. 2006). However, "courts will not generally interfere in the operations of colleges and universities." *Id*. Instead, "[c]ourts are understandably reluctant to step into the middle of university-student disputes. They correctly note that it is inappropriate

to substitute their own judgment for the institution's academic and management decisions." *Id*. Here, UMUC, invoking its own policies and procedures, investigated Mr. Osei's request, determined that he submitted forged documents, provided him a hearing, then expelled him. *See* ECF 1 at ¶¶22 – 30; *see* ECF 1 at Ex. B. *See* ECF 15 at 1-2, Ex. C. Mr. Osei was provided notice and the process envisioned in the policy. *See id.* In doing so, UMUC complied with applicable laws. Thus, Mr. Osei's various common law tort claims, Whistleblower Act, and federal claims against the defendants fail to state a claim that is "plausible on its face." *Bell v. Twombly*, 550 U.S. 544, 570 (2007); *see* Fed. R. Civ. P. 12(b)6. Accordingly, his Complaint should be dismissed.

### E. Mr. Osei Is Not Entitled To a Preliminary Injunction Or A Temporary Restraining Order.

Mr. Osei's request for a preliminary injunction or temporary restraining order should be denied. In order to qualify for a preliminary injunction or temporary restraining order, Mr. Osei must establish that:

(1) he is likely to succeed on the merits;
(2) he is likely to suffer irreparable harm in the absence of preliminary relief;
(3) the balance of equities tips in his favor; and
(4) an injunction is in the public interest.
*Sorenson v. Stevanus*, No. PWG-15-1653, 2015 WL 3953934 at *4 (D. Md. June 26, 2015).

Though he is required to establish that each of the four elements are present, here, Mr. Osei is unable to illustrate that any of the elements favors his cause. First, and foremost,

as acknowledged by Mr. Osei, the expulsion has already occurred. *See* ECF 15 at 1-2, Ex. C. Thus, it is highly unlikely that a denial of the injunction or TRO would cause irreparable injury. The defendants are immune from many of the claims, many of the claims are not recognized causes of action and the Defendants are otherwise not culpable because their actions were not prohibited by any law. Thus, Mr. Osei would probably not succeed on the merits. Mr. Osei, who has invoked his "right to remain silent" regarding the alleged fraud, *see* ECF 1 at ¶40, has no equitable remedy available. Finally, the Courts rarely interfere in the management of Colleges and Universities. *See Onawala*, F.Supp. 2d. at 532. Mr. Osei presents no compelling reasons to justify departing from the usual course. In other words, there is no reasonable basis for the imposition of an injunction, or TRO, which are considered extreme remedies. *See id*. Thus, an injunction or TRO would simply not be in the public interest. Accordingly, this Honorable Court should deny all Mr. Osei's requested relief including his request for an injunction, and request for temporary restraining order.

## V. CONCLUSION

For the foregoing reasons, the Court should grant defendant's motion to dismiss for failure to state a claim.

Respectfully submitted,

BRIAN E. FROSH
Attorney General of Maryland

/s/

Corlie McCormick Jr. #28143
Assistant Attorney General
Educational Affairs Division
200 St. Paul Place
Baltimore, MD 21202
Telephone: (410) 576-6450

Counsel for Defendants