IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL OSEI                          :

                                      :

    v.                                :   Civil Action No. DKC 15-2502

                                      :

UNIVERSITY OF MARYLAND                :
UNIVERSITY COLLEGE, et al.            :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this civil rights action are: (1) motions to dismiss filed by Defendants University of Maryland University College ("UMUC"), the Office of Financial Aid at UMUC (the "Financial Aid Office"), Javier Miyares, Julie Lindenmeier, Clairbourne Patty, Terrence Cooper, and Lynette O'Leary (collectively, the "Defendants") (ECF Nos. 26; 27);[1] (2) a motion filed by Plaintiff Michael Osei ("Plaintiff") to set a rule upon Defendants to serve court documents upon Plaintiff by both e-mail and postal mail (ECF No. 33); (3) Plaintiff's motion *in limine* to preclude references to

---

[1] Defendants filed two identical motions to dismiss, although the docket entries refer to different defendants. (*See* ECF Nos. 26; 27). For purposes of clarity and consistency, this memorandum opinion will cite to ECF No. 26.
  UMUC and the Financial Aid Office are sued together as the entity through which Plaintiff sought graduate-level education. Mr. Miyares is identified as the President of UMUC. Ms. Lindenmeier and Ms. O'Leary worked in the Financial Aid Office, and Mr. Patty worked in the Office of the Registrar. Mr. Cooper worked in Information and Technology Systems. (ECF No. 1 ¶¶ 2-8).

other cases Plaintiff brought against universities and educational entities and for leave to file terminating sanctions against Defendants (ECF No. 35); and (4) Plaintiff's motion for leave to file a surreply (ECF No. 36). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Defendants' motions to dismiss the complaint will be granted. Plaintiff's remaining motions will be denied.

I.   **Background[2]**

Plaintiff is originally from Ghana and immigrated to the United States to pursue educational opportunities. (ECF No. 1 ¶¶ 11-14). In the fall of 2014, UMUC accepted Plaintiff's application for admission "to pursue courses toward[] a degree for Master of Science in Biotechnology with [a] specialty in Bioinformatics . . . which is mostly an online program." (*Id.* ¶ 15). Plaintiff enrolled in graduate-level classes in the Fall 2014 semester and received federal student financial aid.[3] He

---

[2] When considering a motion to dismiss for failure to state a claim, the well-pleaded allegations in the complaint are accepted as true. *See Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011). The facts outlined here are construed in the light most favorable to Plaintiff, the nonmoving party.

[3] The complaint describes a dispute over a grade from one of his two Fall 2014 courses. Ultimately, Plaintiff asserts that "the 'F' grade was changed to a 'B' final passing grade after the discrepancy was resolved in July 2015." (ECF No. 1 ¶ 16). According to him, the dispute "creat[ed] an *erroneous gap* in [Plaintiff's] continued education for the Summer 2015 term

also enrolled in two graduate-level courses in the Spring 2015 semester and received federal student aid. (*Id.* ¶ 17).

During the spring months, Plaintiff apparently requested additional financial aid.  On March 12, 2015, Plaintiff e-mailed officials at the United States Department of Education inviting them to "*immediately* intervene in a financial aid matter ongoing with the Financial Aid Department of [UMUC] that will cause irreparable damages to his right to his continued educational interests and undue financial burdens."  (ECF No. 1-1, at 7 (emphasis in original)).[4]  In a subsequent March 23 e-mail to UMUC employees and Department of Education officials, Plaintiff explained his complaint:

> *Budget increase* is what I requested for the Spring 2015 semester [].  Instead, Mr. Stever of UMUC moved my not-as-of yet [S]ummer 2015 refund to [S]pring 2015, According to Ms. Lindenmeier, such movement

because [Mr.] Cooper forcibly dropped [Plaintiff's] Summer 2015 classes against [Plaintiff's] authorization pending the discrepancy." (*Id.* (emphasis in original); *see id.* ¶ 19).

---

[4] When reviewing a motion to dismiss, "[the United States Court of Appeals for the Fourth Circuit] has held that courts may consider the complaint itself and any documents that are attached to it." *CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009); *see Philips v. Pitt County Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); Fed.R.Civ.P. 10(c).  When the allegations in a complaint conflict with the attached documents, the exhibits prevail. *Fare Deals, Ltd. v. World Choice Travel.com, Inc.*, 180 F.Supp.2d 678, 683 (D.Md. 2001) (citing *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)). The court also "may properly take judicial notice of matters of public record." *Philips*, 572 F.3d at 180.

> of funds from [S]ummer 2015 to Spring 2015
> is not *right* since '[S]ummer 2015 is not yet
> here.'  I agree.   The record shows that I
> did not initially ask for movement of my
> summer aid but a *budget increase* which is
> what is right if student-lender needs
> additional funds.

(*Id.* at 11).   On April 1, Plaintiff submitted a budget increase

request for additional federal student financial aid due to

extenuating circumstances.   Ms. Lindenmeier informed Plaintiff

by e-mail that decisions on such requests are given typically

ten days after the Financial Aid Office receives the student's

completed appeal.   (ECF No. 1 ¶ 20).

On April 20, Plaintiff e-mailed Ms. Lindenmeier: "To reduce

my own high educational costs and time, *I hereby cancel my*

*budget increase request entirely* and withdraw my appeal.  Hence,

you can now disregard my appeal and cancel it."  (ECF No. 1-1,

at 1 (emphasis in original); *see* ECF No. 1 ¶ 21).   Ms.

Lindenmeier sent to the UMUC Office of the Registrar a memo

dated April 21:

> Please accept this notice of violation
> of the Code of Student Conduct, UMUC Policy
> 151.00.  We submit that [Plaintiff] violated
> UMUC Policy 151.00 Section III.N.
> While a student of UMUC, [Plaintiff]
> submitted documentation from the City of
> Philadelphia and Plick and Associates,
> Forensic Engineers to be used to increase
> his cost of attendance and request
> additional federal aid.  We confirmed that
> the information was not [Plaintiff's] and
> the documentation [] was forged.

> For the reasons set forth above,
> [Plaintiff] has violated the Code of Student
> Conduct 151.00 Section[] III.N.  We request
> that this situation is reviewed and a
> decision is made if the student can continue
> to study with UMUC.  Given the severe nature
> of the student's behavior and the ongoing
> risk to UMUC, I recommend the sanction of
> expulsion.

(ECF No. 1-1, at 3; *see* ECF No. 1 ¶ 23).  Subsequently, on May 14, Mr. Patty in the Office of the Registrar wrote to advise Plaintiff that he would be charged with a student conduct violation for submitting false documentation to the Financial Aid Office related to his request for additional financial assistance.  (*See* ECF Nos. 1-1, at 2; 1 ¶ 22).  Upon receipt of Mr. Patty's notice, Plaintiff sent an e-mail on May 15 requesting that UMUC "dismiss and/or withdraw [the] code violation [charge] as MOOT given . . . that [Plaintiff] voluntarily cancelled or withdrew his request for not-yet-decided funds."  (ECF No. 1-1, at 4; *see* ECF No. 1 ¶ 24).  According to Plaintiff, he sent additional e-mails requesting that UMUC dismiss or withdraw the disciplinary action.  (*See* ECF No. 1 ¶¶ 25-27).

According to Plaintiff, UMUC informed him that a disciplinary hearing was scheduled on July 28 to resolve the student conduct charge against him.  (*Id*. ¶ 30).  On July 21, Plaintiff e-mailed Dr. Marie Cini, the Provost of UMUC, regarding the student conduct charge against him in order "to

ensure that he [] exhausted internal remedies . . . before proceeding to federal court." (*Id.* ¶ 33).  On the same day, Plaintiff alleges, Mr. Patty informed him that the hearing remained scheduled for July 28.  Furthermore, he informed Plaintiff that Ms. Lindenmeier was no longer employed at UMUC, and that Ms. O'Leary would serve in her place. (*Id.* ¶ 34). Defendants assert, and Plaintiff does not challenge, that Plaintiff did not participate in the July 28 hearing.  Plaintiff was expelled from UMUC for his student conduct violations in August 2015. (ECF No. 26-1, at 3).

Plaintiff, proceeding *pro se*, filed the complaint in the United States District Court for the District of New Jersey on July 28, 2015. (ECF No. 1).  Plaintiff seeks money damages and injunctive relief.  Several weeks later, the action was transferred to this court. (ECF Nos. 16; 17).  Plaintiff moved for emergency injunctive relief on September 2 (ECF No. 24), which the court denied (ECF No. 25).  Shortly thereafter, Defendants moved to dismiss the complaint for failure to state a claim.  (ECF Nos. 26; 27).  Plaintiff was provided with a *Roseboro* notice, which advised him of the pendency of the motion to dismiss and his entitlement to respond within 17 days.  (ECF Nos. 28; 29); *see Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975) (holding that *pro se* plaintiffs should be advised of their right to file responsive material to a motion for summary

judgment).   Plaintiff responded in opposition, and Defendants replied.   (ECF Nos. 30; 34).   Plaintiff also moved to set a rule upon Defendants to serve court documents upon Plaintiff by both e-mail and postal mail.   (ECF No. 33).   In addition, he moved *in limine* to preclude references to other cases Plaintiff brought against universities and educational entities and for leave to file terminating sanctions against Defendants.   (ECF No. 35).[5] Finally, he moved for leave to file a surreply.   (ECF No. 36).[6]

---

[5] Plaintiff's motions regarding court filings, sanctions, and precluding references to case law will be denied.   Indeed, motions *in limine* are meant "to streamline the case for trial and to provide guidance to counsel regarding evidentiary issues."   *Adams v. NVR Homes, Inc.*, 141 F.Supp.2d 554, 558 (D.Md. 2001).   Here, at the motion to dismiss stage, the sufficiency of the complaint – and not any evidentiary matters – is at issue.   Moreover, because the court will dismiss the claims against the Defendants, Plaintiff's motion to set a rule and motion *in limine* will be moot.

[6] Although district courts have discretion to accept them, surreply briefs are generally disfavored.   *See Chubb & Son v. C.C. Complete Servs., LLC*, 919 F.Supp.2d 666, 679 (D.Md. 2013).   Local Rule 105.2(a) provides that "[u]nless otherwise ordered by the court, surreply memoranda are not permitted to be filed."   Courts may allow a surreply when "the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply."   *Khoury v. Meserve*, 268 F.Supp.2d 600, 605 (D.Md. 2003), *aff'd*, 85 F.App'x 960 (4th Cir. 2004).   Here, Defendants do not raise new legal theories or arguments for the first time in the reply brief.   (*See* ECF No. 34).   In requesting leave to file a surreply, Plaintiff presents many of the same arguments offered in his opposition brief and complaint.   He further argues that a "[surreply] is necessary to attempt to demystify the *false light, prejudice, and shadow* [D]efendants have cast against Plaintiff, and the *shadow* they have case into the proceedings."   (ECF No. 36, at 4 (emphases in original)).   The parties have briefed the relevant legal issues

## II.  Standard of Review

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006).  A complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).  "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).  That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff.  *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Brockington v. Boykins*, 637 F.3d 503, 505-06 (4th Cir. 2011).  In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cnty.*

---

in this case, and Plaintiff's motion for leave to file a surreply will be denied.

*Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989).   Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).   "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] that the pleader is entitled to relief.'"   *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)).   Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Generally, *pro se* pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).   Even when *pro se* litigants are involved, however, the court cannot ignore a clear failure to allege facts that support a viable claim. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

### III. Analysis

The lengthy, meandering six-count complaint does not clearly identify distinct causes of action asserted by Plaintiff.[7] As best the court can discern, Plaintiff asserts claims of: violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, and Title IV of the Higher Education Act of 1965 ("HEA"), 20 U.S.C. § 1070 *et seq.* (Count I); violations of the United States Constitution and civil rights statutes, 42 U.S.C. §§ 1983, 1985, and 1986 (Counts II and III); discrimination on the basis of race in violation of Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d *et seq.*, and 42 U.S.C. § 1981 (Count IV); libel, slander, defamation, and false light (Count V); and breach of contract, intentional infliction of emotional distress, and negligence (Count VI). As a threshold matter, in his response to the pending motion to dismiss, Plaintiff does not directly challenge all of Defendants' specific legal contentions; rather, he repeats many of the same conclusory allegations and arguments in his opposition brief that appeared in the complaint.[8]

---

[7] The complaint mislabels Count VI as Count VII. (ECF No. 1, at 37). To the extent necessary, this memorandum opinion will refer to Count VI.

[8] Plaintiff's opposition brief includes factual allegations not included in the complaint and raised for the first time in response to Defendants' motion to dismiss. (*See* ECF No. 30-1, at 6-12, 24-27). Such allegations are not properly considered

### A. The HEA and 34 C.F.R. § 668.16

At the center of Plaintiff's case is his apparent contention that UMUC wrongfully pursued charges of student conduct violations against him, ultimately leading to his expulsion in August 2015.  Defendants maintain, and Plaintiff does not dispute, that the disciplinary action resulted from Plaintiff's submission of fraudulent documents in support of his request for additional financial aid.  Nowhere in the papers does Plaintiff deny submitting false financial aid documentation; rather, his claims stem from his allegation that UMUC lacked authority to impose disciplinary sanctions.  The parties agree that Plaintiff was given notice of the student conduct charges against him and a hearing was scheduled on this matter.  (ECF Nos. 1 ¶¶ 30-35; 1-1, at 2, 3).  He did not attend the July 28 hearing, and UMUC expelled Plaintiff the following month.  Plaintiff challenges the validity of the hearing "on grounds of lack of jurisdiction in violation of his constitutional due process which prevents [UMUC] from adjudicating a 'Title IV of HEA matter' as a student conduct code matter."  (ECF No. 1 ¶ 36).  This appears to be the crux of Plaintiff's argument – that the HEA and its regulations preclude

---

by the court.  *See Mylan Labs., Inc. v. Akzo, N.V.*, 770 F.Supp. 1053, 1068 (D.Md. 1991) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (citation and internal quotation marks omitted)).

UMUC from disciplining Plaintiff for submitting fraudulent documentation as part of a financial aid application.

Plaintiff's contention, however, is without merit. Title IV of the HEA established several types of student aid programs administered by the Department of Education, each with the aim of fostering access to higher education. *See Career Coll. Ass'n v. Duncan*, 796 F.Supp.2d 108, 113 (D.D.C. 2011), *aff'd in part, rev'd in part sub nom. Ass'n of Private Sector Colleges & Universities v. Duncan*, 681 F.3d 427 (D.C. Cir. 2012). Defendants argue that although "postsecondary institutions are required to report financial aid fraud, waste, and abuse, neither the HEA nor any related regulations control whether a postsecondary institution may impose discipline for violations of that institution's [c]ode of [s]tudent [c]onduct." (ECF No. 26-1, at 10); *see* 34 C.F.R. § 668.16. Moreover, "the HEA neither expressly nor impliedly provides Plaintiff[] with a private right of action" to enforce its aims. *Moy v. Adelphi Inst., Inc.*, 866 F.Supp. 696, 705 (E.D.N.Y. 1994); (*see* ECF No. 1 ¶ 30 ("[T]here is no private right of action by a student against a school or a [s]chool against a student under Title IV of [the] HEA.")).[9] Accordingly, Plaintiff's HEA claim will be dismissed.

---

[9] Plaintiff also asserts an FCA claim against Defendants: "By using or attempting to use their student conduct process to

12

## B. Discrimination Claims

Throughout the complaint, Plaintiff includes assertions of constitutional violations and violations of federal civil rights statutes. Even assuming *arguendo* that Plaintiff's claims do not fail due to sovereign immunity and qualified immunity, he nonetheless has failed to provide factual allegations in support of his conclusory claims sufficient to withstand Defendants' motion to dismiss. Plaintiff asserts claims of discrimination under Title VI and § 1981. Under Title VI, no person shall "be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance" because of the person's race, color, or national origin. 42 U.S.C. § 2000d. To state a claim under Title VI, a plaintiff must allege facts that show the defendant intentionally discriminated against him on the

---

prosecute [Plaintiff] instead of the [Department of Education's Office of Inspector General], Defendants [] knowingly presented, or caused to be presented, to an officer or employee of the United States government, false or fraudulent claims for payment or approval." (ECF No. 1 ¶ 59). The FCA prohibits persons and entities from knowingly presenting false or fraudulent claims to the federal government for payment or approval. 31 U.S.C. §§ 3729 *et seq*. Here, Plaintiff argues that Defendants violated the FCA by instituting student disciplinary procedures rather than referring the matter to the Department of Education. As noted above, however, the HEA does not preclude educational institutions from enforcing their own student conduct codes, irrespective of whether the disciplinary action concerns applications or awards of financial aid. Plaintiff provides no further support for his claim under the FCA, which will be dismissed.

basis of race, color, or national origin, and that defendant receives federal financial assistance. *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001).  Section 1981 provides, in pertinent part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens[.]"  42 U.S.C. § 1981(a).  The statute broadly defines the term "make and enforce contracts" as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).  To state a claim under § 1981, a plaintiff must establish "purposeful, racially discriminatory actions that affect at least one of the contractual aspects listed in § 1981(b)." *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1018 (4th Cir. 1999).  Thus, both Title VI and § 1981 require that Plaintiff plausibly allege intentional discrimination.  Here, he has not done so; Plaintiff's claims of discrimination based on race or national origin will be dismissed because the complaint provides no factual support that his disciplinary proceedings and ultimate expulsion resulted from anything other than his submission of false documentation in connection with his financial aid request.[10]

---

[10] In his opposition brief, Plaintiff appears to argue that

### C. Alleged Constitutional Violations

Plaintiff also asserts civil rights claims under 42 U.S.C. §§ 1983, 1985, and 1986 stemming from alleged violations of the First Amendment and deprivations of due process.  In a conclusory manner, Plaintiff asserts that Defendants "deprived [Plaintiff] of his right to freedom of expression under the First Amendment by discriminating against [him] on the basis of the points of view expressed in the content of his protected speech."  (ECF No. 1 ¶ 93).  According to Plaintiff, his March 12 e-mail to Department of Education officials and UMUC employees constitutes protected speech because he "'*voiced his opinion*' and '*spoke his piece of mind*' against alleged bad experiences of black members of the [Financial Aid Office] staff, as well as perfunctory and discriminatory practices of [Ms.] Lindenmeier and the [Financial Aid Office]."  (*Id.* ¶ 95 (emphases in original) (citing ECF No. 1-1, at 7-34)).  The nature of Plaintiff's First Amendment claim appears to be that Defendants unconstitutionally retaliated against him through the disciplinary process.

> To state a *prima facie* case for a Free
> Speech Clause retaliation claim, the
> plaintiff must establish three elements.
> "First, the plaintiff must demonstrate that

---

Defendants have not met the requirements of Fed.R.Civ.P. 9(b), suggesting that it is Defendants' burden here to plead financial aid fraud with particularity.  (*See* ECF No. 30-1 at 38-40). Defendants, however, have no burden to plead a cause of action.

> his or her speech was protected." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000) (citation omitted). "Second, the plaintiff must demonstrate that the defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech." *Id.* (citation omitted). "Third, the plaintiff must demonstrate that a causal relationship exists between its speech and the defendant's retaliatory action." *Id.* (citation omitted). Generally, to establish that his or her speech is protected, the free speech retaliation plaintiff must show that "the expressions which are alleged to have provoked the retaliatory action relate to matters of public concern." *See Huang v. Bd. of Gov'rs of Univ. of N.C.*, 902 F.2d 1134, 1140 (4th Cir. 1990) (footnote omitted) (citing *Connick v. Myers*, 461 U.S. 138 (1983)).

*Smith v. Univ. of Maryland Univ. Coll.*, No. 8:10-CV-01687-AW, 2011 WL 5833665, at *2 (D.Md. Nov. 18, 2011). Here, Plaintiff plainly fails plausibly to allege a causal nexus between the March 12 e-mail and any purported retaliatory action that adversely affected his First Amendment rights. Beyond Plaintiff's bare assertion that Defendants retaliated against him, the complaint is devoid of supporting factual enhancement. Accordingly, the complaint fails to state a cognizable First Amendment claim.

Furthermore, the complaint appears to allege that Plaintiff was deprived of procedural and substantive due process because Defendants did not halt his disciplinary proceeding or refer the

matter to the Department of Education, as Plaintiff argues is necessary under the HEA.  According to Plaintiff:

> [Plaintiff] is entitled to the protections of the Due Process Clause of the Fourteenth Amendment to the United States Constitution in connection with the disciplinary proceedings and sanctions unilaterally scheduled by [D]efendants which [are] likely to result in the recommended expulsion or other disciplinary punishments which would result in a deprivation or impairment of [his] constitutionally-protected property and liberty interests.
>
> Defendants are denying [Plaintiff] due process by formulating, implementing and applying policies and procedures which deprive[] [him] of the right to a fair hearing by an impartial and unbiased tribunal, thereby denying fundamental due process to their student . . . because [Defendants] do not have jurisdiction over the matter, case, or controversy, whereas the alleged conduct strictly involved a request for the U.S. Department of Education funds . . . governed by [] Title IV of the HEA.

(ECF No. 1 ¶¶ 77-78).  As noted by the Fourth Circuit in *Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach*, 420 F.3d 322, 328 (4th Cir. 2005):

> To establish a violation of procedural due process, plaintiffs must show that (1) they had property or a property interest (2) of which the defendant deprived them (3) without due process of law.  *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 826 (4th Cir. 1995).  To establish a violation of substantive due process, plaintiffs must "demonstrate (1) that they had property or a property interest; (2) that the state deprived them of this property or property interest; and (3) that

> the state's action falls so far beyond the
> outer limits of legitimate governmental
> authority that *no process* could cure the
> deficiency." *Sylvia Dev. Corp.*, 48 F.3d at
> 827 (citing *Love v. Pepersack*, 47 F.3d 120,
> 122 (4th Cir. 1995)) (emphasis in original).

Furthermore, the Supreme Court of the United States determined that the disciplinary action against a student requires at least some measure of notice and some type of informal hearing. *Goss v. Lopez*, 419 U.S. 565, 579 (1975).[11]

Here, Plaintiff was notified of the student conduct charges lodged against him on, at the latest, May 14, 2015. (*See* ECF No. 1-1, at 2). Plaintiff alleges that Mr. Patty informed him by e-mail on July 16 that a student conduct hearing had been scheduled for July 28. (ECF No. 1 ¶ 30). Plaintiff retained the services of an attorney, who tried unsuccessfully to resolve the case prior to the hearing. (*Id.* ¶¶ 28-29, 31). The parties do not dispute that Plaintiff did not participate in the July 28

---

[11] In *Goss*, a public high school student faced a ten-day suspension. There, the Supreme Court determined that due process required that the student be given oral or written notice of the charges against him and, if he denied them, an explanation of the evidence that the authorities have and an opportunity to present his side of the story. *Goss*, 419 U.S. at 581. Because the suspension was not lengthy, the Supreme Court held that the disciplinary hearing could occur shortly after the student received notice and did not need to afford the student the opportunity to "secure counsel, to confront and cross-examine witnesses supporting the charge, or to call his own witnesses to verify his version of the incident." *Id.* at 582-83. The Supreme Court cautioned that "[l]onger suspensions or expulsions for the remainder of the school term, or permanently, may require more formal procedures." *Id.* at 584.

18

hearing, and he was expelled from UMUC for his student conduct violations in August 2015.  (ECF No. 26-1, at 3).  In particular, Plaintiff argues that: (1) the UMUC disciplinary hearing denied him the opportunity to confront his alleged accusers (ECF No. 1 ¶ 80(a)); (2) the hearing's panel was biased "because it [was] dominated by members of the University Disciplinary Committee" (*id.* ¶ 80(c)); (3) the hearing was "not authorized by the Student Code of Conduct" (*id.* ¶ 80(d)); and (4) Plaintiff "is being judged" by Ms. Lindenmeier, who Plaintiff learned was no longer an employee of the Financial Aid Office and would be absent at the hearing (*id.* ¶ 80(e)).

Plaintiff's due process claims fail for a number of reasons.  First, he neglected to appear on his behalf at the July 28, 2015 disciplinary hearing, thereby waiving his right to challenge the student conduct charges brought against him.  And, having not attended, Plaintiff cannot know whether he would have been given an opportunity to confront his accusers at the hearing.  But even if Plaintiff had attended the hearing, and even if the school had prevented him from confronting his accusers at the hearing, there still would have been no due process deprivation.  "[S]chool disciplinary proceedings are not required to adopt all of the formalities of a criminal trial." *Doe v. Univ. of Cincinnati*, No. 1:15-CV-681, 2016 WL 1161935, at *10 (S.D.Ohio Mar. 23, 2016) (citing *Flaim v. Med. Coll. of*

*Ohio*, 418 F.3d 629, 640 (6th Cir. 2005) ("Full-scale adversarial hearings in school disciplinary proceedings have never been required by the Due Process Clause[.]"); *Gorman v. University of R.I.*, 837 F.2d 7, 16 (1st Cir. 1988) ("[O]n review, the courts ought not to extol form over substance, and impose on educational institutions all the procedural requirements of a common law criminal trial.")); *see Osei v. Temple Univ. of Commonwealth Sys. of Higher Educ.*, No. 10-2042, 2011 WL 4549609, at *10 (E.D.Pa. Sept. 30, 2011), *aff'd sub nom. Osei v. Temple Univ.*, 518 F.App'x 86 (3d Cir. 2013) ("In the university disciplinary context, the right to counsel, the right to confront witnesses, and the right to cross-examine witnesses generally have not been deemed necessary elements of due process of law."). Moreover, although Ms. Lindenmeier left the employ of the Financial Aid Office before the July 28 hearing, Plaintiff was notified that "[Ms.] O'Leary, Assistant Director in the [Financial Aid Office], will serve as the [c]omplainant going forward." (ECF No. 1 ¶ 34).

Similarly:

> School disciplinary boards must of course be impartial, *Heyne v. Metropolitan Nashville Pub. Sch.*, 655 F.3d 556, 567 (6th Cir. 2011), but they are entitled to a presumption of honesty and impartiality absent a showing of actual bias. *Atria v. Vanderbilt Univ.*, 142 F.App'x 246, 256 (6th Cir. 2005). Generally, the alleged bias of the disciplinary board must be evident from the record and not

> based on inference and speculation. *Nash v.
> Auburn Univ.*, 812 F.2d 655, 665 (11th Cir.
> 1987). A plaintiff must allege facts
> sufficient to overcome this presumption,
> such as statements by board members or
> university officials indicating bias or a
> pattern of decision-making suggesting that
> gender was an influence. *Murray v. New York
> Univ. College of Dentistry*, 57 F.3d 243, 251
> (2[d] Cir. 1995).

*Doe*, 2016 WL 1161935, at *9; *see Duke v. North Texas St. Univ.*,
469 F.2d 829, 834 (5th Cir. 1972) ("Alleged prejudice of
university hearing bodies must be based on more than mere
speculation and tenuous inferences."). Here, beyond mere
speculation, Plaintiff offers no factual allegations indicating
any purported bias or prejudice. And concerning Plaintiff's
assertion that the UMUC student conduct code did not authorize
the disciplinary hearing at issue, Plaintiff provides no further
argument or citation to provisions of the student code in
support of his contention. Neither does Ms. Lindenmeier's
official recommendation from the Financial Aid Office to the
Office of the Registrar that Plaintiff be expelled run afoul of
the student code or deprive him of constitutional due process.
Rather, "[d]ue process is satisfied by way of adequate notice,
definite charge, and a hearing with opportunity to present one's
own side of the case and with all necessary protective
measures." *Murakowski v. Univ. of Delaware*, 575 F.Supp.2d 571,

585 (D.Del. 2008) (citation and internal quotation marks omitted). Those requirements were present here.

Failing plausibly to allege deprivations of his constitutional rights, Plaintiff's § 1983 claims will be dismissed. Plaintiff similarly cannot maintain his 42 U.S.C. §§ 1985(3) and 1986 claims. He alleges that Defendants:

> had knowledge that the wrongs *conspired* to be done were about to be committed, had the power to prevent or resolve – because the [student] code also provided that the complainant can withdraw the allegation and the code administrator can also withdraw the allegation on their own or to aid in preventing the commission of the same, and neglected or refused to do so, even though the wrongs which were committed could have been prevented by the exercise of reasonable diligence and are therefore liable for the alleged conspiracies.

(ECF No. 1 ¶ 106 (emphasis in original)). To state a claim under § 1985, Plaintiff must allege: (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive Plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to Plaintiff as (5) a consequence of an overt act committed by Defendants in connection with the conspiracy. *Unus v. Kane*, 565 F.3d 103, 126 (4th Cir. 2009). Here, however, Plaintiff has not adequately pleaded any facts indicating intentional, class-based discrimination by Defendants. *See Akyeampong v. Coppin State Coll.*, 538 F.Supp.

22

986, 991-92 (D.Md. 1982), *aff'd*, 725 F.2d 673 (4th Cir. 1983) ("[A § 1985(3) claim] requires proof of a conspiracy to deprive someone of the equal protection of the laws and proof of some racial or class-based invidious discrimination.  Plaintiff's bare allegations that the college had it 'in' for Africans is not sufficient.").  Nor has Plaintiff alleged specific facts regarding "the time, place and effect of the conspiracy, including the nature of the agreement and overt acts in furtherance of the conspiracy." *Langworthy v. Dean*, 37 F.Supp.2d 417, 424-25 (D.Md. 1999).  Indeed, the complaint is devoid of allegations that there was "an agreement or a 'meeting of the minds' by [Defendants] to violate [Plaintiff's] constitutional rights." *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995).  Plaintiff has made only conclusory allegations of a conspiracy, and his § 1985 claim will be dismissed.

Plaintiff also asserts a cause of action under § 1986 against Defendants.  A § 1986 claim may be maintained for neglecting to prevent the conspiracies to commit the wrongs outlined in § 1985.  Here, because Plaintiff fails to state a claim under § 1985, his § 1986 claim cannot succeed.  *See Trerice v. Sumons*, 755 F.2d 1081, 1085 (4th Cir. 1985) ("A cause of action based upon § 1986 is dependent upon the existence of a claim under § 1985.").  Accordingly, Plaintiff's § 1986 claim also will be dismissed.

23

D. State Law Claims[12]

Plaintiff asserts claims in Count V for defamation and libel.[13]  According to Plaintiff:

---

[12] This action was filed in federal court in New Jersey and transferred here, apparently "based on the convenience of the parties and witnesses and in the interest of justice" under 28 U.S.C. § 1404(a).  (ECF No. 16, at 3).  Under such circumstances, "the choice-of-law rules of the transferor's forum will apply." *Jacobson v. Sweeney*, 82 F.Supp.2d 458, 461 (D.Md. 2000).  "New Jersey has adopted the 'most significant relationship' test of the Restatement (Second) of Conflict of Laws." *Arlandson v. Hartz Mountain Corp.*, 792 F.Supp.2d 691, 699 (D.N.J. 2011) (citation omitted).  If a conflict does exist – as between, for instance, Maryland and Pennsylvania law – "the [c]ourt must determine which state has the 'most significant relationship' to the claim, by 'weigh[ing] the factors set forth in the Restatement section corresponding to the plaintiff's cause of action.'" *Id.*
Plaintiff is a resident of Pennsylvania asserting common law tort and contract causes of action against Maryland defendants.  In his response brief, Plaintiff cites primarily to case law from Pennsylvania.  The parties, however, provide no argument regarding the relevant choice-of-law analysis, and the alleged wrongful conduct took place in Maryland.  Ultimately, whether Maryland or Pennsylvania law applies is of no moment, as the elements for Plaintiff's state law causes of action are substantially similar in Maryland and Pennsylvania.  This opinion will recite the elements of Plaintiff's claims under the governing law in each forum state.

[13] Plaintiff advances both defamation and false light invasion of privacy claims.  Under Maryland law, his false light claim need not be assessed separate and apart from his defamation claim because "[a]n allegation of false light must meet the same legal standards as an allegation of defamation[,]" and Plaintiff's allegations of defamation fail to state a claim. *Piscatelli v. Van Smith*, 424 Md. 294, 306 (2012).
In Pennsylvania, "as a result of its similarity to defamation, the courts have applied to the '[p]ublicity placing person in false light' actions some of the same considerations that govern defamation actions." *Fogel v. Forbes, Inc.*, 500 F.Supp. 1081, 1088 (E.D.Pa. 1980).  Pennsylvania courts have adopted the Restatement's definition of the tort:

> Defendants, well knowing the facts set forth in the preceding paragraph concerning [Plaintiff's] reputation in the community and with intent to injure [him] and bring him into public scandal and disgrace, knowingly and maliciously, or with reckless disregard for the truth or negligently and carelessly published or caused to be published the scandalous, defamatory, and libelous statements of and concerning [Plaintiff].

(ECF No. 1 ¶ 125).  Plaintiff points to an April 21 internal memo from Ms. Lindenmeier to the Office of the Registrar in which she wrote, "Given the severe nature of the student's behavior and the ongoing risk to UMUC, I recommend the sanction of expulsion."  (ECF No. 1-1, at 3).

Libel is a branch of the tort of defamation, which covers acts of written defamation.  *Russell v. Railey*, No. DKC-08-2468, 2012 WL 1190972, at *3 (D.Md. April 9, 2012).  To state a claim

---

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy if (a) the false light claim in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Fanelle v. LoJack Corp.*, 79 F.Supp.2d 558, 563 (E.D.Pa. 2000) (quoting Restatement (Second) of Torts § 652E (1977)).  Here, Plaintiff's conclusory allegations do not sufficiently plead publicity or the requisite intent.

for defamation in Maryland, a plaintiff must plead the following four elements: "(1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm." *Offen v. Brenner*, 402 Md. 191, 198 (2007). "A defamatory statement is one which tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or associating with, that person." *Id.* at 198–99 (citation and internal quotation marks omitted).[14]   Here, the purported defamatory statement referenced by Plaintiff was included in an internal memo from Ms. Lindenmeier in the Financial Aid Office to the UMUC Office of the Registrar regarding Plaintiff's student conduct violation. Because the complaint includes no allegations that the statement was published to third parties, the defamation claim in Count V cannot withstand Rule 12(b)(6) review. *See*

---

[14] The tort's elements differ somewhat in Pennsylvania, where a defamation plaintiff must plead:

> (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff.

*Weinstein v. Bullick*, 827 F.Supp. 1193, 1196 (E.D.Pa. 1993).

*Smith*, 2011 WL 5833665, at *4.   Moreover, although Plaintiff argues that he "was a law abiding citizen of [] Pennsylvania and [a] student at UMUC who enjoyed the respect, confidence and esteem of his neighbors," he never specifically contests the veracity of the allegedly defamatory statement.   (ECF No. 1 ¶ 124).

In Count VI, Plaintiff alleges that Defendants breached a contract with him "by forcibly dropping [his] classes in 2015." (*Id.* ¶ 159).   "To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation."   *Jaguar Land Rover N. Am., LLC v. Manhattan Imported Cars, Inc.*, 738 F.Supp.2d 640, 649 (D.Md. 2010) (citing *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001)).[15]   Here, beyond asserting that Defendants breached a contract by preventing him from enrolling in courses for the Summer 2015 term, Plaintiff provides no relevant factual allegations.   He

---

[15] A Pennsylvania plaintiff must plead "1) the existence of a contract and its terms; 2) a breach of the duty imposed by the contract; and 3) damages that resulted."   *Furey v. Temple Univ.*, 730 F.Supp.2d 380, 400 (E.D.Pa. 2010) (citing *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa.Super.Ct. 1999)). Furthermore, "Pennsylvania refuses 'to recognize a general cause of action . . . where the allegation is simply that the educational institution failed to provide a quality education.'" *Manning v. Temple Univ.*, No. 03-4012, 2004 WL 3019230, at *12 (E.D.Pa. Dec. 30, 2004) (quoting *Swartley v. Hoffner*, 734 A.2d 915, 918 (Pa.Super.Ct. 1999)), *aff'd*, 157 F.App'x 509 (3[d] Cir. 2005).

does not attach a specific contract, nor does he reference contractual terms or obligations from which the court could find plausible a breach of contract claim. Thus, the breach of contract claim in Count VI will be dismissed.

Plaintiff also asserts that Defendants intentionally inflicted emotional distress on him by creating "an irreparable gap, injury and harm . . . [in] [his] continued education." (ECF No. 1 ¶¶ 165-66).

> In order to succeed on an intentional infliction of emotional distress claim, [Plaintiff] must demonstrate (a) intentional or reckless conduct that is (b) outrageous and extreme (c) causally connected to (d) extreme emotional distress. *See Caldor, Inc. v. Bowden*, 330 Md. 632, 641-42 (1993). Maryland courts "have made it clear that liability for the tort of intentional infliction of emotional distress should be imposed sparingly, and its balm reserved for those wounds that are truly severe and incapable of healing themselves." *Id.* at 642 (quotation omitted). "In order to satisfy the element of extreme and outrageous conduct, the conduct 'must be so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Mitchell v. Baltimore Sun Co.*, 164 Md.App. 497, 525 (2005) (quoting *Batson v. Shiflett*, 325 Md. 684, 733 (1992)). The emotional distress "must be so severe that 'no reasonable man could be expected to endure it.'" *Id.* (quoting *Harris v. Jones*, 281 Md. 560, 571 (1977)). "One must be unable to function; one must be unable to tend to necessary matters." *Id.* (quotation omitted). Finally, Maryland courts "have said that a complaint alleging intentional

> infliction of emotional distress must be
> pleaded with specificity." *Id.* (citing *Foor
> v. Juvenile Sevs. Admin.*, 78 Md.App. 151,
> 175 (1989)).

*Vance v. CHF Int'l.*, 914 F.Supp.2d 669, 682 (D.Md. 2012).[16] The conduct of Defendants as alleged in the complaint is far from extreme and outrageous. Even if Defendants intentionally gave Plaintiff a lower grade than he had earned, or intentionally restricted Plaintiff's ability to enroll in courses during the Summer 2015 term, it would not exceed "all bounds of decency." Moreover, Plaintiff has not alleged specific facts showing that he suffered from emotional distress as a result of this conduct that rendered him dysfunctional. (*See* ECF No. 1 ¶¶ 166, 174). Even when accepting all of Plaintiff's factual allegations as true, the complaint merely recites in conclusory form the bare elements of an intentional infliction of emotional distress claim. Accordingly, his claim fails to allege facts sufficient to survive a motion to dismiss.

Finally, Plaintiff advances conclusory claims of negligence against Defendant in Count VI. Plaintiff alleges: "Defendants . . . are cooperatively liable and culpable for statutory

---

[16] Pennsylvania courts similarly require that a plaintiff asserting intentional infliction of emotional distress adequately plead "that the defendant's conduct be 'extreme and outrageous.'" *Manning*, 2004 WL 3019230, at *9 (quoting *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1273 (3ᵈ Cir. 1979)). "Only in the most extraordinary circumstances has conduct been considered extreme and outrageous by the courts of Pennsylvania." *Id.*

negligence, negligence to *duty of care* and negligence by omission and commission, misinformation and misrepresentation all to the detriment of [Plaintiff]." (*Id.* ¶ 168 (emphasis in original)). To state a claim for negligence, a plaintiff must allege that: (1) the defendant was under a duty to protect the plaintiff from injury; (2) the defendant breached that duty; (3) the plaintiff suffered actual injury or loss; and (4) the loss or injury proximately resulted from the defendant's breach of the duty. *Quigley v. United States*, 865 F.Supp.2d 685, 696 (D.Md. 2012). In Maryland, causes of action based on negligence or negligent misrepresentation require the plaintiff to prove that he is owed a duty by the alleged tortfeasor. *Jacques v. First Nat'l Bank of Maryland*, 307 Md. 527, 531 (1986). "A contractual obligation, by itself, does not create a tort duty. Instead, the duty giving rise to a tort action must have some independent basis." *Mitchell, Best & Visnic, Inc. v. Travelers Prop. Cas. Corp.*, 121 F.Supp.2d 848, 853 (D.Md. 2000) (citing *Mesmer v. Md. Auto. Ins. Fund*, 353 Md. 241, 253 (1999)).[17] Critically, Plaintiff identifies no specific duties of care

---

[17] In Pennsylvania, claims of "[n]egligence and negligent misrepresentation are premised 'on the existence of a duty owed by one party to another.' Furthermore, negligent misrepresentation . . . requires that a plaintiff justifiably rely on a misrepresentation and suffer injury as a result." *Manning*, 2004 WL 3019230, at *12 (quoting *Gibbs v. Ernst*, 538 Pa. 193, 210 (1994)). Here, as in *Manning*, "[the plaintiff] has simply not presented evidence that any of the defendants failed her with respect to any such duty recognized by law." *Id.*

purportedly breached by Defendants.   His negligence claim will be dismissed.

## IV.  Conclusion

For the foregoing reasons, Defendants' motions to dismiss will be granted, and Plaintiff's remaining motions will be denied.  A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
